UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RLI INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>ACE AMERICAN INSURANCE CO., et al.,<br><br>    Defendants. | Case No. 19-CV-04180-LHK<br><br>**ORDER GRANTING DEFENDANT RDC'S MOTION TO STAY AND DENYING WITHOUT PREJUDICE PLAINTIFF RLI'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. Nos. 38, 42 |

Plaintiff RLI Insurance Co. ("RLI") brings this action against Defendants ACE American Insurance Co. ("ACE") and RossDrulisCusenbery Architecture, Inc. ("RDC") (collectively, the "Defendants") seeking, among other things, declaratory relief that ACE, and not RLI, owes a duty to defend and indemnify RDC in an underlying California state court lawsuit brought against RDC in 2019 (the "2019 Underlying Action"). *See* ECF No. 1 ("Compl."). Before the Court is Plaintiff RLI's motion for judgment on the pleadings, ECF No. 38, and Defendant RDC's motion to stay pending resolution of the 2019 Underlying Action. ECF No. 42. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS RDC's motion to stay and DENIES RLI's motion for judgment on the pleadings without

1

prejudice.

## I. BACKGROUND

### A. Factual Background

#### 1. The Parties in the Instant Case

RLI is an insurance company incorporated in Illinois with its principal place of business in Peoria, Illinois. Compl. ¶ 3. ACE is likewise an insurance company, incorporated in Pennsylvania with its principal place of business in Philadelphia, Pennsylvania. *Id.* ¶ 4. RDC is an architecture firm incorporated in California with its principal place of business in Sonoma, California. *Id.* ¶ 5.

#### 2. The ACE and RLI Policies

Both ACE and RLI provided liability insurance to RDC. Specifically, from October 30, 2006 to October 30, 2009, ACE provided liability insurance to RDC under ACE's "Advantage Professional Liability Policy For Design Professionals" ("ACE Policy"). *Id.* ¶ 17. For the ACE Policy to cover a claim against RDC, the claim would have to be "made against RDC during the policy period[] and reported to ACE during the policy period." *Id.* However, the ACE Policy allowed RDC to give ACE notice of a potential claim. *Id.* ¶ 21. Such notice could trigger coverage under the ACE Policy for a later-filed claim, even outside the policy period, if the later-filed claim arose out of the same "Interrelated Wrongful Acts" as those in the previous notice to ACE. *Id.* ¶¶ 19-21. The ACE Policy defined "Interrelated Wrongful Acts" as "all Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes." *Id.* ¶ 19.

Likewise, from October 30, 2018 to October 30, 2019, RLI provided liability insurance for RDC under RLI's "Professional Liability Policy (Design Professionals)" ("RLI Policy"). *Id.* ¶ 22. The RLI Policy requires "that a claim be first made against RDC during the policy period" for coverage. *Id.* Furthermore, the RLI Policy contained a provision for "Multiple/Related Claim(s)," wherein the RLI Policy stated that "Related Claims will be treated as a single Claim, regardless of

2

Case No. 19-CV-04180-LHK
ORDER GRANTING DEFENDANT RDC'S MOTION TO STAY AND DENYING WITHOUT PREJUDICE
PLAINTIFF RLI'S MOTION FOR JUDGMENT ON THE PLEADINGS

when the earliest Claim was made against [RDC]." *Id.* ¶ 25. The RLI policy defined "Claim" as "a demand received by [RDC] for money or services and which alleges a Wrongful Act," *Id.* ¶ 24, and defined "Related Claim" as "all Claims for Wrongful Acts that are logically or causally connected by common facts, situations, events, transactions, decisions or advice." *Id.* ¶ 25.

### 3. The Underlying 2011 Action

In 2001, RDC entered into a "Professional Service Agreement" ("PSA") with the County of Santa Clara ("County"). *Id.* ¶ 8. Under this agreement, "RDC agreed to provide architectural, engineering, planning, design and construction administration services in connection with the Morgan Hill Courthouse and Justice Agencies Building in Santa Clara County" ("Courthouse Project"). *Id.*

In 2007, while ACE insured RDC, RDC alerted ACE to "a potential claim in connection with [RDC's] duties and work performed under the PSA." *Id.* ¶ 9. Later, in 2011, RDC brought a lawsuit in California state court against the County for "nonpayment of amounts due under the PSA." *Id.* In response, the County filed a cross-complaint against RDC alleging breach of the PSA for "alleged design defects in the Project" (the "2011 Underlying Action"). *Id.* Specifically, the "County allege[d] that RDC: 'materially breached the [PSA] by failing to provide services within the applicable standard of care' and 'breached its duties by providing deficient designs.'" *Id.* ¶ 10 (citations omitted).

Although the County filed the 2011 Underlying Action after ACE ceased insuring RLI, the basis of the County's lawsuit arose out of the same potential claim that RLI filed with ACE in 2007. *Id.* ¶¶ 27-28. As such, ACE defended RDC against the County's design defect lawsuit in the 2011 Underlying Action. *Id.* ¶ 11. Ultimately, the 2011 Underlying Action settled with a release of liability. *Id.* ¶ 12; *see also* Mot. at 4.

### 4. The Underlying 2019 Action

In 2008, the County and the Judicial Council of California ("JCC") executed a transfer agreement for the Courthouse Project, and the transfer agreement "assigned the County's interest

3

Case No. 19-CV-04180-LHK
ORDER GRANTING DEFENDANT RDC'S MOTION TO STAY AND DENYING WITHOUT PREJUDICE
PLAINTIFF RLI'S MOTION FOR JUDGMENT ON THE PLEADINGS

in the completed [Courthouse] Project to the JCC, including the assignment of the County's rights under the PSA." Compl. ¶ 13. In 2019, JCC, as the County's successor in interest, filed the 2019 Underlying Action against RDC in California state court. *Id.* ¶ 14. JCC alleged that RDC breached the PSA "on the basis that RDC [] provided defective designs for the [Courthouse] Project." *Id.* ¶ 15.

In response to JCC's lawsuit, RDC tendered RDC's defense to both RLI and ACE under the RLI Policy and the ACE Policy, respectively. ACE declined to defend RDC because ACE determined that the "wrongful acts" alleged in the 2019 Underlying Action were not "Interrelated Wrongful Acts" under the ACE Policy with respect to the 2011 Underlying Action and RDC's 2007 notice of potential claim. *Id.* ¶ 30. Therefore, ACE determined that the ACE Policy did not cover the 2019 Underlying Action and that ACE did not owe a duty to defend RDC. *Id.* RLI disagreed with ACE's conclusion that the 2019 Underlying Action did not involve "Interrelated Wrongful Acts" and disagreed that the ACE Policy excluded the 2019 Underlying Action. *Id.* ¶ 31. Further, RLI determined that the 2019 Underlying Action was a "Related Claim" to the 2011 Underlying Action under the RLI Policy, and thus, for the purposes of the RLI policy, the 2019 Underlying Action was filed before RLI insured RDC. *Id.* ¶ 29. As such, RLI determined that the RLI Policy did not cover the 2019 Underlying Action. *Id.* Therefore, RLI concluded that ACE, and not RLI, owed a duty to defend RDC. *Id.* ¶¶ 29-31.

Despite RLI's conclusion that RLI did not owe a duty to defend RDC, "RLI agreed to defend RDC under reservation of rights, including the right to seek reimbursement, . . . because ACE refused to so defend." *Id.* ¶ 32. The 2019 Underlying Action is currently "in its preliminary stages," and RLI has continued to defend RDC. Mot. at 4. Furthermore, RDC indicates that it is "clear that a centerpiece of RDC's defense to the 2019 Underlying Action will be that [JCC's] claims are barred by the release [of liability] contained in the settlement of the 2011 Underlying Action." *Id.* Indeed, RDC included this affirmative defense "in [RDC's] Answer to the Complaint in the 2019 Underlying Action." *Id.*

4
Case No. 19-CV-04180-LHK
ORDER GRANTING DEFENDANT RDC'S MOTION TO STAY AND DENYING WITHOUT PREJUDICE
PLAINTIFF RLI'S MOTION FOR JUDGMENT ON THE PLEADINGS

### B. Procedural History of the Instant Case

On July 19, 2019, RLI filed its complaint seeking declaratory relief that RLI does not have a duty to defend RDC, as well as seeking indemnity, subrogation, and reimbursement. *See* Compl. ¶¶ 33-61. On September 12, 2019, RDC answered RLI's complaint. ECF No. 15. On the same day, RDC filed a crossclaim against ACE seeking declaratory relief that ACE has a duty to defend RDC in the 2019 Underlying Action "in the event that RLI prevails on [RLI's] Complaint." ECF No. 17 at 3. On September 16, 2019, ACE answered RLI's complaint, ECF No. 19, and on October 22, 2019, answered RDC's crossclaim. ECF No. 31.

On October 28, 2019, the Court filed a case management order. ECF No. 37. The Court explained that "[i]f Defendants want their motion to stay to be considered at the same time as Plaintiff's Rule 12(c) motion, Defendants must file their motion to stay" the same week that RLI filed its motion for judgment on the pleadings. *Id.* at 1.

On October 30, 2019, RLI filed a motion for judgment on the pleadings. ECF No. 38. On December 12, 2019, ACE and RDC independently opposed RLI's motion for judgment on the pleadings, ECF Nos. 46, 48, and on December 18, 2019, RLI filed a reply. ECF No. 51.

On November 1, 2019, the same week that RLI filed its motion for judgment on the pleadings, RDC filed a motion to stay pending resolution of the 2019 Underlying Action. ECF No. 42 ("Mot."). On December 12, 2019, ACE filed a limited joinder to RDC's motion to stay. ECF No. 49. On December 13, 2019, RLI opposed RDC's motion to stay, ECF No. 50 ("Opp."), and on December 20, 2019 RDC replied. ECF No. 52 ("Reply").

## II.   LEGAL STANDARD

### A. *Landis* Applies to the Instant Motion

As an initial matter, the parties dispute which legal standard applies to RDC's motion to stay. *See* Mot. at 5; Opp. at 15-16. Specifically, RDC argues that federal procedural law should apply such that *Landis v. North American Co.*, 299 U.S. 248 (1936), governs. *See* Mot. at 5; *see also* Reply at 2-3. Conversely, RLI argues that California state procedural law should apply and that *Montrose Chemical Co. of California v. Superior Court*, 6 Cal. 4th 287 (1993), governs. *See*

5

Case No. 19-CV-04180-LHK
ORDER GRANTING DEFENDANT RDC'S MOTION TO STAY AND DENYING WITHOUT PREJUDICE
PLAINTIFF RLI'S MOTION FOR JUDGMENT ON THE PLEADINGS

Opp. at 5, 16 ("[RDC's cited cases] are not on point because those cases relied on *Landis* rather than the controlling authorit[y] of *Montrose*"). However, the Court has already extensively addressed this question in *Zurich American Ins. Co. v. Omnicell, Inc.*, No. 18-CV-05345-LHK, 2019 WL 570760, at *2-5 (N.D. Cal. Feb. 12, 2019). There, the Court held that "*Landis* applies . . . because federal procedural law governs in diversity cases." *Id.* at *4. As in *Zurich*, the instant case proceeds under diversity jurisdiction, Compl. ¶ 6, and as such "federal procedural law, and not *Montrose*, . . . governs the instant motion." *Zurich*, 2019 WL 570760, at *4. RLI offers no argument for why the Court should depart from the Court's previous ruling in *Zurich*, and the Court finds no reason to alter its conclusion here. *See generally* Opp. at 14-17. Accordingly, the Court assesses RDC's motion to stay under *Landis*.

### B. Motion to Stay Under *Landis*

Under *Landis*, the Court has "discretionary power to stay proceedings in its own court." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* "Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55). As such, when determining whether to grant a stay, the Court weighs three factors: (1) the possible damage to the non-moving party, (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice." *CMAX*, 300 F.2d at 268 (citing *Landis*, 299 U.S. at 254-55); *see also Lockyer*, 398 F.3d at 1110 (applying *Landis* factors).

### III. DISCUSSION

### A. Weighing the *Landis* Factors

The Court now weighs the *Landis* factors and assesses (1) the possible damage to RLI from granting a stay; (2) the possible harm or prejudice to RDC that could arise if the instant case proceeds without a stay; and (3) whether a stay will serve the orderly administration of justice. *See CMAX*, 300 F.2d at 268.

#### 1. A Stay Will Cause Minimal Damage to RLI

The Court first assess the possible damage to RLI which may result from granting RDC's motion to stay the instant case. The Court concludes that granting a stay will cause minimal damage to RLI, and therefore, the first factor weighs in favor of granting a stay.

Though RLI contends that it will suffer material harm because it will be required to continue defending RDC in an action in which RLI has no duty to defend, Opp. at 6, the Ninth Circuit has held that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112. Further, the Court has already held that delaying a determination of whether an insurer owes an insured party coverage does not substantially harm the insurer. *See Zurich*, 2019 WL 570760, at *5. Specifically, the Court aligned with "[o]ther courts in this district" and found that "advancing defense costs 'is part of an insurer's obligation and costs of doing business.'" *Id.* (quoting *State Nat'l Ins. Co., Inc. v. US-SINO Inv., Inc.*, No. 5-13-CV-05240-EJD, 2015 WL 5590842, at *5 (N.D. Cal. Sept. 23, 2015)); *see also United Specialty Ins. Co. v. Meridian Mgmt. Grp., Inc.*, No. 15-CV-01039-HSG, 2016 WL 1534885, at *2 (N.D. Cal. Apr. 15, 2016) (rejecting an insurer's argument that a stay would cause the insurer harm).

Moreover, RLI is defending RDC "under reservation of rights, including the right to seek reimbursement," meaning that RLI can recover the costs of defending RDC. Compl. ¶ 32. The Court and other courts in this district have held that the ability of an insurer to recover for continued defense weighs against finding that a stay harms the insurer. *See Zurich*, 2019 WL 570760, at *5 (finding minimal harm to the insurer, in part, because "[the insurer] can recover the costs of defending [the insured party] after the underlying action is resolved"); *see also Meridian*

7
Case No. 19-CV-04180-LHK
ORDER GRANTING DEFENDANT RDC'S MOTION TO STAY AND DENYING WITHOUT PREJUDICE
PLAINTIFF RLI'S MOTION FOR JUDGMENT ON THE PLEADINGS

*Mgmt.*, 2016 WL 1534885, at *2 (same); *United Specialty Ins. Co. v. Bani Auto Grp. Inc.*, No. 18-CV-01649-BLF, 2018 WL 5291992, at *5 (N.D. Cal. Oct. 23, 2018) (same). Furthermore, and most importantly, the Ninth Circuit has already held that a delay in recovery of damages "is not the kind of prejudice which should move a court to deny a requested postponement." *CMAX*, 300 F.2d at 269.

Therefore, because RLI can seek reimbursement from RDC and will thus suffer minimal damage, the Court finds that the first *Landis* factor weighs in favor of granting a stay.

### 2. Allowing the Instant Case to Proceed Could Cause Hardship and Prejudice to RDC

The Court now turns to the possible harm or prejudice that RDC could suffer if the Court allows the instant case to proceed. RDC argues that RDC will suffer without a stay because RDC will have to fight a "two-front war," "will be forced to engage in discovery and litigate issues that are more properly addressed in the 2019 Underlying Action," and will be forced to take "inconsistent positions" between the instant case and the 2019 Underlying Action. *See* Mot. at 7-9. RLI responds that the instant case and the 2019 Underlying Action lack any "overlapping issues of consequence," such that the two cases will adjudicate independent issues and will not force RDC to make contradictory arguments. *See* Opp. at 17-18. Further, RLI argues that RDC's concerns about fighting a "two-front war" are nonexistent because there are no overlapping issues of consequence. *Id.* at 18.

The Court concludes that allowing the instant case to proceed could result in harm or prejudice to RDC. Specifically, the Court finds that denying a stay could harm RDC for two reasons. First, denying RDC's motion could force RDC to take contradictory positions in the instant case and in the 2019 Underlying Action. Second, denying RDC's motion would force RDC to fight a "two-front war" and therefore cause hardship and prejudice to RDC.

   a. Allowing the Instant Case to Proceed Could Force RDC to Take Contradictory Positions Regarding the "Relatedness" of the 2011 and 2019 Underlying Actions

First, RDC argues that RDC will have to take contradictory positions to defend against the

8
Case No. 19-CV-04180-LHK
ORDER GRANTING DEFENDANT RDC'S MOTION TO STAY AND DENYING WITHOUT PREJUDICE
PLAINTIFF RLI'S MOTION FOR JUDGMENT ON THE PLEADINGS

instant suit and to defend against the 2019 Underlying Action. *See* Mot. at 8-9; Reply at 3-5. Specifically, RDC argues that "RLI's entire case [in the instant case] is based on [RLI's] claim that the [2011 and 2019 Underlying Actions] are 'related claims' and involve 'interrelated wrongful acts,'" such that ACE and not RLI has to defend RDC. Reply at 4-5. Therefore, RDC argues that to defend against RLI in the instant case, RDC must argue that the 2011 and 2019 Underlying Actions are *not* "Related Claims" and *do not* involve "Interrelated Wrongful Acts." *See id.* In addition, RDC also contends that one of "RDC's primary defenses to the 2019 Underlying Action is that all claims were released by the prior settlement agreement [from the 2011 Underlying Action]." *Id.* According to RLI's briefing, the settlement agreement released "any and all claims . . . which the [parties] now own or hold, or have at any time owned or held, or which may hereinafter accrue on account of, *or relating to or relating from*, the [2011 Underlying Action]." Opp. at 12 (emphasis added).[1] As a result, RDC argues that the central defense to the 2019 Underlying Action requires RDC to argue that the 2011 and 2019 Underlying Actions *are in fact related claims*. *See* Reply at 4-5. This argument is contrary to the argument RDC must make in the instant case, and thus, allowing the two cases to proceed simultaneously could prejudice RDC. *See id.*; Mot. at 8-9.

RLI asserts that RDC would not be prejudiced because the instant case and the 2019 Underlying Action will adjudicate different issues. *See* Opp. at 10-13, 17-18. Specifically, RLI argues that "whether the claims in the two actions constitute 'Interrelated Wrongful Acts' is not the same determination as to whether the 2019 Design Defect Action is barred by the scope of the [settlement] Release [from the 2011 Underlying Action]." *Id.* at 15. RLI contends that the two

---

[1] The Court notes that RDC objects to the propriety of RLI's "attempt[] to put into the record the language of a *confidential* settlement agreement, to which *[RLI] was not a party*, the meaning and scope of which is *currently being disputed in the [2019] underlying litigation*." Reply at 4 (emphasis in original); *see also id.* ("RLI has no business quoting the settlement agreement in public filings in this litigation. For this reason, RLI quotes this language without any source or citation. Thus, it lacks any foundation."). Nonetheless, RDC argues that "the language RLI chose to quote" supports RDC's motion to stay. *Id.* As such, for the purposes of assessing RDC's motion to stay, the Court assumes that RLI's briefing correctly quotes the settlement agreement from the 2011 Underlying Action.

9
Case No. 19-CV-04180-LHK
ORDER GRANTING DEFENDANT RDC'S MOTION TO STAY AND DENYING WITHOUT PREJUDICE
PLAINTIFF RLI'S MOTION FOR JUDGMENT ON THE PLEADINGS

determinations are entirely independent because "[t]he language upon which [the] determinations [in the instant case and in the 2019 Underlying Action] will be made is different." *Id.*

The Court agrees with RDC. Even if the language of the settlement release is different from the language of the ACE and RDC Policies, the fundamental question still turns on the "relatedness" of the 2019 and 2011 Underlying Actions. In the instant case, in order to rule on the merits, the Court will have to determine whether the 2011 and 2019 Underlying Actions "are logically or causally connected by common facts, situations, events transactions, decisions or advice" when assessing whether the two actions are "Related Claims" under the RLI Policy. *See* Compl. ¶ 25 (quoting the RLI Policy). Additionally, in the instant case, reaching the merits will also compel the Court to determine whether the 2011 and 2019 Underlying Actions "have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes" when assessing "Interrelated Wrongful Acts" under the ACE Policy. *See* Compl. ¶ 19 (quoting the ACE Policy). Although this language from the ACE and RLI Policies at issue here does differ from the language of the 2011 Underlying Action's settlement agreement, the settlement agreement nonetheless uses the language "related to or relating from." Opp. at 12 (quoting the settlement agreement). Therefore, in the 2019 Underlying Action, the parties will have to address whether the 2019 Underlying Action "relat[es] to or relat[es] from" the 2011 Underlying Action. *See* Reply at 3-5.

Indeed, even though the contract language the Court and the California state court will interpret are different—as the Court must interpret the language of the RLI Policy and ACE Policy and the California state court must interpret the 2011 settlement agreement—the Court rejects RLI's argument that these linguistic differences mean that the two inquiries are entirely independent and present no "overlapping" or "common issues." *See* Opp. at 10-12. Although RLI may be correct that the scope of the settlement agreement will not be adjudicated in both cases, both the Court and the California state court will have to assess the degree to which the 2011 and 2019 Underlying Actions are "related" through underlying facts and circumstances. *See id.* at 12.

10

Case No. 19-CV-04180-LHK
ORDER GRANTING DEFENDANT RDC'S MOTION TO STAY AND DENYING WITHOUT PREJUDICE
PLAINTIFF RLI'S MOTION FOR JUDGMENT ON THE PLEADINGS

Therefore, to ensure that RLI continues defending RDC in the 2019 Underlying Action, RDC will be forced to argue in the instant case that JCC's claims are separate, independent and unrelated to the 2011 Underlying Action. That argument is the exact opposite of the argument RDC would raise in the 2019 Underlying Action. The Court will not hold RDC to such a Hobson's choice.

As a result, the Court finds that forcing RDC to argue that the 2011 and 2019 Underlying Actions are *not* "logically or casually connected" could prejudice RDC's simultaneous defense that the two *are in fact* related. Specifically, such an argument could trigger collateral estoppel, which weighs strongly in favor of granting a stay. *State Farm Fire & Casualty Co. v. B.T.B., Inc.*, No. CV-F-10-1990-LJO-DLB, 2011 WL 284974 (E.D. Cal. Jan. 26, 2011) ("An insured may also be prejudiced by collateral estoppel."); *Montrose Chemical Corp. v. Superior Court*, 25 Cal. App. 4th 902, 910 (1994) ("If the declaratory relief action is tried before the underlying litigation is concluded, the insured may be collaterally estopped from relitigating any adverse factual findings in the third party action."). Put another way, if the instant case is not stayed, RDC would have to develop a factual record and make arguments that JCC could then use against RDC in the 2019 Underlying Action. The Court finds that forcing RDC into such a contradictory position could prejudice RDC and therefore weighs strongly in favor of granting a stay.

      b. *Allowing the Instant Case to Proceed Will Force RDC to Fight a "Two-Front War"*

Second, RDC argues that denying a stay would force RDC to "fight a 'two-front war'" because RDC will have to simultaneously litigate against its own insurer, RLI, and against JCC, the plaintiff in the 2019 Underlying Action. Mot. at 2. RLI responds that "[t]he concern about fighting a 'two-front war' is relevant only where there are overlapping issues of consequence" and thus "inapplicable here because this [case] does not seek to adjudicate a policy provision or exclusion which is the same as an issue to be decided in the 2019 [Underlying Action]." Opp. 18. Further, RLI argues that "RDC will not be prejudiced by fighting two litigations simultaneously" because even if RDC succeeds in the instant case, ACE will step in and defend RLI. *Id.*

RDC has the better argument. The Court has already recognized that forcing an insured

11

party to simultaneously litigate against its own insurer and against a claimant in an underlying litigation weighs in favor of a stay. *See Zurich*, 2019 WL 570760, at *6 ("Courts have found that any prejudice (if at all) to the insurer in having to pay defense costs while the underlying case is pending is outweighed by prejudice to the insured in having to fight a 'two-front war.'" (collecting district court and state cases)); *see also Atain Specialty Insurance Co. v. 20 Parkridge, LLC*, No. 15-CV-00212-MEJ, 2015 WL 2226356, at *10 (N.D. Cal. May 11, 2015) ("Defendants should not have to fight both in this action and the Underlying Action, expending significant resources. To do so would undercut one of the primary reasons for purchasing liability insurance." (quotation marks omitted)). Further, in light of the previous discussion regarding the overlapping issue of "relatedness" between the instant case and the 2019 Underlying Action, the Court rejects RLI's notion that the concerns of a "two-front war" are inapplicable here because there are "no overlapping issues." *See* Opp. at 18.

RLI additionally argues that RDC would suffer no prejudice from a "two-front war" because "ACE will assume RDC's defense" in the event RLI's declaratory action is successful. *See id.* To the contrary, ACE's answer to RDC's crossclaim asserts numerous defenses as to why ACE does not owe a duty to defend RDC in the 2019 Underlying Action. *See* ECF No. 31 at 4-6 (asserting fifteen defenses). As a result, if RLI is successful in the instant action, ACE appears poised to dispute any potential duty ACE owes to RDC. Thus, whether ACE will assume RDC's defense remains an open question if RLI prevails in the instant case.

In summary, allowing the present case to proceed would force RDC to take contradictory positions and compel RDC to engage in a "two-front war" in both the instant case and the 2019 Underlying Action. Accordingly, the Court finds that the second *Landis* factor weighs strongly in favor of granting a stay.

### 3. A Stay Would Promote the Orderly Course of Justice

Lastly, the Court considers whether a stay will serve the orderly course of justice, "measured in terms of the simplifying or complicating of issues, proof, and questions of law which

could be expected to result from a stay." *CMAX*, 300 F.2d at 268. The Court concludes that a stay will promote the orderly administration of justice and could potentially simplify factual issues. As an initial matter, under *Landis*, courts do not require that two proceedings adjudicate identical issues to find that a stay would promote the orderly course of justice. Instead, courts look for whether the underlying case would make determinations that would inform or "contribute to the decision of[] the factual and legal issues before the district court." *Lockyer*, 398 F.3d at 1113 ("We hold only that a Landis stay is improper in the circumstances of this case . . . where the [other proceeding] . . . is unlikely to decide, or to contribute to the decision of, the factual and legal issues before the district court"); *see also*, *N. River Ins. Co. v. Leffingwell Ag Sales Co.*, No. CV-F-10-2007-LJO-MJS, 2011 WL 304579, at *7 (E.D. Cal. Jan. 27, 2011) ("While the Underlying Action is not identical to the current action, the Underlying Action will make factual determinations upon which coverage may hinge."); *Fahmy v. Live Nation Entm't, Inc.*, No. 2-15-CV-01158-CAS, 2015 WL 3617040, at *13 (C.D. Cal. June 8, 2015) ("Although the outcome of the [underlying case] will not necessarily be dispositive of this case, that outcome will certainly inform this case."); *Nat'l Union Fire Ins. Co. v. Elec. Arts*, No. C-11-04897-JW, 2012 WL 219428, at *3 (N.D. Cal. Jan. 24, 2012) ("The resolution of this question in the Underlying Lawsuits bears upon this action, inasmuch as it has the potential to simplify the issues before the Court in this action."). Importantly, granting a stay under *Landis* "does not require that the issues in [the separate] proceedings are necessarily controlling of the action before the court." *Leyva*, 593 F.2d at 863-64.

Here, as discussed previously, the Court finds that both the instant case and the 2019 Underlying Action will address the "relatedness" of the 2011 and 2019 Underlying Actions. Although the language of the settlement agreement from the 2011 Underlying Action (the issue to be adjudicated in the 2019 Underlying Action) differs from the language in the ACE and RLI Policies (the issue to be adjudicated in the instant case), the two inquiries will nonetheless assess the degree to which the 2011 Underlying Action "relates" to the 2019 Underlying Action. *See*

13
Case No. 19-CV-04180-LHK
ORDER GRANTING DEFENDANT RDC'S MOTION TO STAY AND DENYING WITHOUT PREJUDICE
PLAINTIFF RLI'S MOTION FOR JUDGMENT ON THE PLEADINGS

Mot. at 8-10. As such, the state court findings as to "relatedness" could "inform" or "bear upon" the Court's determination of whether the 2019 and 2011 Actions involve "Interrelated Wrongful Acts" or "Related Claims" under the ACE and RLI policies. Therefore, the Court concludes that allowing the state court to proceed first would serve the orderly course of justice and would promote judicial efficiency.

Accordingly, because the determinations in the 2019 Underlying Action could inform the Court's decision in the instant case, the Court finds that the third *Landis* factor weighs in favor of granting RDC's motion to stay.

### 4. Conclusion

All three *Landis* factors weigh in favor of granting a stay in the instant case pending resolution of the 2019 Underlying Action. Therefore, the Court GRANTS RDC's motion to stay.

### B. The Court Declines to Decide RLI's Motion for Judgment on the Pleading

Because the Court GRANTS RDC's motion to stay, the Court declines to reach RLI's motion for judgment on the pleadings until the stay is lifted after resolution of the 2019 Underlying Action. Therefore, the Court DENIES RLI's motion for judgment on the pleadings without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS RDC's motion to stay the instant case pending resolution of the 2019 Underlying Action and DENIES RLI's motion for judgment on the pleadings without prejudice. The Clerk shall administratively close the file during the pendency of the stay. This is a purely administrative internal procedure that does not affect the rights of the parties.

**IT IS SO ORDERED.**

Dated: March 20, 2020

_____
LUCY H. KOH
United States District Judge

14
Case No. 19-CV-04180-LHK
ORDER GRANTING DEFENDANT RDC'S MOTION TO STAY AND DENYING WITHOUT PREJUDICE
PLAINTIFF RLI'S MOTION FOR JUDGMENT ON THE PLEADINGS